**Earl L. BONNER, Plaintiff,**

v.

**UNIVERSITY CITY SCHOOL DISTRICT et al., Defendants.**

**No. 76–587–C(4).**

United States District Court,
E. D. Missouri, E. D.

June 29, 1979.

William P. Russell and Joseph S. McDuffie, St. Louis, Mo., for plaintiff.

Bertram W. Tremayne, Jr., Eric F. Tremayne, Clayton, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits following a trial without a jury. Plaintiff brought this action in seven counts alleging violations of Title 42 U.S.C. § 2000e et seq., Title 42 U.S.C. §§ 1981, 1983 and 1985, the First, Thirteenth and Fourteenth Amendments to the United States Constitution, and the Missouri Teacher Tenure Act, § 168.102 et seq., R.S.Mo. (1970).

After careful consideration of the evidence presented at trial and the entire record, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff Earl L. Bonner is a black, male citizen of the United States, residing in the Eastern District of Missouri.

2. Defendant University City School District is a six director school district of the state of Missouri located in St. Louis County, Missouri. Dr. James A. Hopson was at all times relevant hereto the superintendent of the University City School District. The other named defendants are the past and present director and members of the Board of Education of the University City School District.

3. Defendants operate and manage the schools of University City and the administrative programs of that district.

4. Plaintiff Earl Bonner was hired by defendant as principal of the Blackberry Lane Elementary School in July of 1971 for the school year 1971–72, and again for the school year of 1972–73. Prior to that time plaintiff had been a principal with the St. Louis Public School System.

5. In April of 1973 a tax levy failed to pass in University City, thereby forcing the reorganization of its school district. As a result, a number of schools were closed. Consequently, the positions of three principals were reduced to two. They were filled by Ms. Lee Trotter, who had been with the University City School District since 1951, and Mr. Frank Duval, who had been with the district since 1950. Both of them, according to the uncontradicted evidence, were rated as outstanding. All told, the reorganization plan caused the closing of three elementary schools and one junior high school.

6. Plaintiff was offered the opportunity of returning to teaching or continuing on in another administrative position. He chose the latter, and in June, 1973 was named the Project Director of the Intercultural Education Program, a Title VII project in the University City School District. The purpose of the project under the Emergency School Aid Act (ESAA) was to help minority students compete in an integrated school situation. Its goals were to promote racial harmony and, as such, reduce racial tension in the schools. As ESAA Director, plaintiff supervised 12 people, prepared budgets, made reports to the United States Office of Education and monitored various aspects of the program at different locations throughout the University City School District.

7. Plaintiff was rehired in his position as Project Director in April of 1974 and again in April of 1975, both for one year terms. As early as April, 1975, however, he was notified by the Board of its intention at that time not to rehire him the next year and encouraged him to seek other work. Plaintiff applied for employment with the St. Louis Public School System in December, 1975.

8. The Board of Education sent plaintiff a letter dated April 8, 1976 officially notifying him that he would not be re-employed in his present staff position and that his present contract would terminate at its expiration date of June 30, 1976. Plaintiff requested a written statement of the reasons for his lack of re-employment which were given him by the Board in its letter of April 26, 1976. The Board noted that it had felt and expressed concern for some time about Mr. Bonner's ability to offer the educational leadership it required of administrators in the district. Other evidence in the record, particularly the testimony of Dr. Hopson, showed that the other administrators in the school district were simply not seeing the results in the children that they desired and were not seeing evidence that the project was working. Further, concerns were expressed that plaintiff was not working as many hours as were the other administrators.

9. Ms. Lee Trotter, as was noted above, was the principal of the Daniel Boone School for the 1974–75 school year, and her contract had been renewed for the 1975–76 school year. Near the end of the 1974–75 school year, however, she retired for personal reasons and asked that her contract be withdrawn. Plaintiff, along with others, wrote the Board to express interest in that position in May of 1975, after he had been told that he would not be retained as director of the ESAA project. Since plaintiff's application was already on file, he had made his request known by a letter, as was the proper procedure. Plaintiff was not hired, however. The job went to Ms. Billie Jacobs, a black female. There was no evidence presented to show that Ms. Jacobs, was in any way less qualified than the plaintiff.

10. Plaintiff made no other application to the University City School District for employment. Rather, he returned to the St. Louis Public School System.

11. Mr. Ray Clark, a white principal in the University City Schools, was to have been terminated at the end of the 1975–76 school year from his position with the District. After receiving the notice of his termination, he, with counsel, successfully appealed that termination because of a technical flaw in the way the motion to terminate his employment was presented at the Board of Education meeting. By the time the error was made known, the April 15th deadline for termination of employees had

passed and, therefore, he was reluctantly rehired.

12. Melvin Hines, a black male, had been hired to replace Mr. Clark prior to the resolution of Mr. Clark's successful appeal of his termination. Plaintiff had not applied for this position. Mr. Hines was then made the Director of the ESAA project on a half-time basis and also the Director of ARCH, a mathematics project run through CEMREL, on a half-time basis. The reason Mr. Hines served in this manner is because at this time the federal funds for the Title VII ESAA project had been cut in half.

13. The reason Mr. Ray Clark was hired for a subsequent year is, as indicated supra, because his termination procedure was defective. The procedures involved in the termination of Mr. Bonner, however, were not defective. The School District complied with the applicable guidelines in its failure to rehire him after 1976.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the matter pursuant to Title 28 U.S.C. § 1343 and Title 42 U.S.C. § 2000e et seq.

2. Defendant School District is an employer within the meaning of Title 42 U.S.C. § 2000e et seq.

3. Plaintiff Earl L. Bonner has sufficiently complied with the jurisdictional prerequisites mandated by Title 42 U.S.C. § 2000e et seq.

4. This Court concludes that defendants' failure to hire plaintiff as principal of the Daniel Boone School when Ms. Billie Jacobs was hired was not wrongful.

5. This Court concludes further that the termination of Mr. Bonner by the School District's failure to offer him a contract beyond the 1976 year as an administrator was for good cause as set forth in the findings of fact above.

6. Plaintiff has failed to show that the treatment afforded him by defendants in their refusal to hire him in both instances was pretextual in nature. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

7. This Court concludes further that the defendants' treatment of Mr. Ray Clark under the facts set forth above in comparison to defendants' treatment of plaintiff was not disparate within the meaning of applicable law even though Mr. Clark was rehired for another year. The Court reaches this conclusion based on the facts set forth above which show the conditions under which Mr. Clark was given another contract. *See* § 168.101(4), R.S.Mo. (1970). Therefore, although plaintiff pleaded a prima facie case for disparate treatment, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), defendants have amply rebutted this showing by their showing that Mr. Bonner's termination was for good cause and that the failure to hire him as a principal of the Daniel Boone School was not discriminatory.

8. The Court therefore concludes that the federal statutes and constitutional provisions as pleaded by plaintiff have in no way been violated by the defendant.

9. Plaintiff has also argued that defendants have violated the Missouri Teacher Tenure Act, § 168.102 et seq. R.S.Mo. (1970), in the failure to rehire him. The plaintiff argues that he had tenure under the Teacher Tenure Act and therefore should have been offered a teaching position at University City when he was not re-employed as Director of the ESAA project. The plaintiff had been employed for a number of years by the St. Louis Public School System and was employed at University City as a principal. The Act indicates that anyone first employed by a district as a principal or assistant principal shall after serving two years as principal or assistant principal have tenure as a permanent teacher of that system. Consequently, after serving two years as principal at the Blackberry Lane Elementary School, plaintiff did have tenure at University City. The crucial issue, however, is whether or not plaintiff continued to have tenure when he was not re-employed as a principal and chose the job as the Project Director of

ESAA. § 168.104 of the Act defines "teacher" as any employee of a school district regularly required to be certified under the laws relating to certification of teachers except superintendents, assistant superintendents, and any other persons regularly performing supervisory functions as their primary duty. Plaintiff was performing supervisory functions as his primary duty and was, therefore, neither a teacher nor a principal. As such, he had no tenure rights under the Act.

The Teacher Tenure Act became effective July 1, 1970. In 1973 § 168.101 R.S.Mo. was enacted. This section concerned employment of certificated teachers ineligible for permanent status under the Teacher Tenure Act, and the purposes of that section were to give benefits and procedural rights to people such as plaintiff. In fact, when plaintiff was notified that he would not be re-employed as Director, ESAA, the letter from the Board of Education dated April 8, 1976 (Deft's. Ex. E) states *inter alia* that "pursuant to the provisions of § 168.101.3 VAMS we hereby notify you that you will not be re-employed". The plaintiff was covered by this section and its requirements were met by the Board of Education.

■ 10. Plaintiff has also variously alleged that his treatment by defendants is part of a pattern and practice of discrimination against him. Although plaintiff's proof on this matter was not developed in an entirely clear manner, statistical evidence introduced into the record by defendants amply rebuts any such charge.

■ 11. As a final matter, both parties in this action have requested attorneys' fees. As plaintiff has prevailed on none of his counts, the request on his behalf will be denied. Defendants' request for attorneys' fees will also be denied because this Court does not find that plaintiff's claim was frivolous, unreasonable, unmeritorious, and brought in bad faith. *See generally, Christiansburg Garment Co. v. E. E. O. C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Accordingly, judgment will be entered for defendants on all counts.